[Civ. No. 14061.  First Dist., Div. Two.  Dec. 12, 1949.]

MARY LOU NEWBAUER, Appellant, v. THOMAS NEWBAUER, Respondent.

Roland R. King and John A. Sinclair for Appellant.

Oscar Samuels, Tevis Jacobs and Young, Hudson & Rabinowitz for Respondent.

DOOLING, J.—Plaintiff secured an interlocutory decree of divorce from defendant on the ground of cruelty. She appeals from that portion of the decree allowing alimony and counsel fees asserting that the trial court abused its discretion in not allowing more, and also attacks the decree for its failure to make any provision for her costs of suit. After entry of the decree plaintiff made a motion for an allowance of additional counsel fees and costs to prosecute her appeal. She was allowed the actual costs of the appeal and $500 for counsel fees. She is also appealing from this allowance of $500.

The parties were married in Texas in October, 1942, while defendant was a private in the U. S. Army. At the time of their marriage plaintiff was 34 years of age and employed in a clerical position at $125 per month. After the marriage she lived with defendant at Army camps in Wisconsin and Maine until defendant was sent overseas in May, 1943. Defendant returned from his overseas duties in August, 1945. Up to that time the relations between the spouses had been cordial and harmonious.

Commencing with his return to the United States defendant engaged in a course of continuous drinking to the point of chronic alcoholism. He was in and out of sanitariums and under the intermittent care of physicians and nurses as a result and his conduct toward plaintiff when intoxicated was abusive, and when not intoxicated he at times studiously ig-

nored her. Whether or not he subjected her to physical violence is disputed, except for the incident in Santa Fe hereafter discussed.

About September, 1946, defendant stopped drinking and joined Alcoholics Anonymous. To plaintiff's knowledge he has not drunk intoxicating liquors since. He continued to be abusive to plaintiff however and finally in the summer of 1947 while the spouses were in Santa Fe, New Mexico, plaintiff left defendant and came to San Francisco.

Plaintiff's back, commencing in 1944, had been subject to strain and soreness and in October, 1946, she consulted a Dr. Anderson who taped her back. Plaintiff testified that just before the separation of the parties in Santa Fe defendant had picked her up, twisted her arm behind her back and carried her from one room to another and dropped her onto the floor. She testified further that this incident caused the injury to her back for which she afterwards was compelled to undergo an operation. Defendant denied picking her up or twisting her arm or body, his version being that he took her by the arm and forced her backward from one room to the other. In any event on her return to San Francisco plaintiff again consulted Dr. Anderson and he found her in extreme pain from a herniated intervertebral disc which was pressing on the spinal nerve leading to the left leg. This resulted in severe pain, restricted motion, abnormal posture and some atrophy of the left leg from buttock to calf. Dr. Anderson first put her in traction, but when this failed to relieve her condition, she was in December subjected to an operation by which the herniated disc was removed and the opposing vertebrae fused together with a piece of bone taken from the patient's hip. At the time of the trial in the following May plaintiff was still incapacitated and wearing a back brace. The doctor testified that when she will be able to do work such as secretarial work or sales work ''will depend a great deal on her future course and symptoms and findings. . . . I think eventually she will be able to return to that type of work. I don't know how soon, but I think, with passage of time and improvement in her condition, she probably will be able to return to work—light work.'' On cross-examination Dr. Anderson testified that ''I believe that she probably will over a period of several months get to the point where she can do light work . . . I think probably not less than three or four months and probably within a year.'' Dr. Anderson also stated that an incident such as plaintiff described in Santa Fe

might result in the rupture of the intervertebral disc which he found on her return.

█ Defendant is the beneficiary of two substantial trusts and the court found that his income, before payment of income taxes, approximates $2,000 per month. The court allowed plaintiff alimony for two years only, at the rate of $350 per month for the first year and $300 per month for the second. The interlocutory decree also orders the payment by defendant of listed bills accrued, including doctor bills, of $2,974.55.

The defendant's cruelty was alleged in general terms as permitted by the code (Code Civ. Proc., § 426b), the allegation reading:

"That . . . said defendant . . . has committed acts of cruelty upon and toward the plaintiff; that these acts have caused plaintiff great and grievous mental and physical suffering, with the result that the health of plaintiff has been seriously impaired."

The trial court found that these allegations of the complaint are true. The only serious impairment of health established was the injury to plaintiff by reason of the herniated disc so that we must assume that the trial court found that this injury resulted from defendant's conduct as testified by plaintiff.

It is appellant's position, having in view the circumstances of the parties (Civ. Code, § 139) and the aggravated course of conduct of the defendant culminating in the serious and at least temporarily incapacitating injury to plaintiff, that the court abused its discretion in making the award that it did for the limited period of only two years.

█ However it is the settled rule that in making an award of alimony the trial court has a wide discretion. "Before the appellate courts will interfere, it must be made clearly and affirmatively to appear upon the face of the entire record in the case that this discretion has been abused." (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413 [170 P.2d 670] ; 1 Cal.Jur. 1012.) The code itself recognizes the right of the trial court to award alimony to an innocent wife "during her life or for a shorter period as the court may deem just." (Civ. Code, § 139.)

█ The trial court had a right to consider the fact that the plaintiff had been self-supporting at the time of her marriage, that she was still relatively young and that despite her existing incapacity her own physician expected her to be sufficiently recovered in not less than four months nor more than one year to be able to assume some gainful employment. In allowing her alimony for two years we must assume that

the trial judge concluded from all the testimony that at the end of two years the plaintiff would be restored to health and reestablished in a gainful occupation.

That the members of this court might have been more liberal is not the test. The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did. (*Fillmore* v. *Fillmore*, 74 Cal.App.2d 418 [168 P.2d 725]; *Cozzi* v. *Cozzi*, 81 Cal.App.2d 229 [183 P.2d 739]; *Furniss* v. *Furniss*, 75 Cal.App.2d 138 [170 P.2d 486].)

Appellant cites cases from other jurisdictions which we do not find it necessary to discuss. Under the established law of this state we cannot hold on the facts that the trial judge abused his discretion in limiting the award of alimony.

The decree allowed $2,000 as counsel fees to the attorney who tried the case and $500 to another attorney who drew the complaint. The award of $2,000 was in addition to $200 awarded previously. The case took about seven days to try and must have entailed considerable work in preparation. We are asked to hold that $2,200 is so small an allowance for this work as to demonstrate an abuse of discretion. We cannot agree with this. The determination is primarily for the trial court (*Bailey* v. *Bailey*, 60 Cal.App.2d 291 [140 P.2d 693]; *Biaggi* v. *Sawyer*, 75 Cal.App.2d 105 [170 P.2d 678]; *Heck* v. *Heck*, 63 Cal.App.2d 470 [147 P.2d 110]) and we are not convinced that any abuse of discretion appears herein. Appellant cites cases upholding awards of larger fees under similar circumstances. They are not controlling since they do not hold that the awarding of a smaller fee would have been an abuse of discretion. Considerable leeway must be allowed to judicial discretion in fixing attorney's fees since it is common knowledge that legal charges are far from being standardized.

The allowance of $500 for counsel fees to prosecute the appeals falls in the same category. We cannot find that the failure to allow more constituted the clear abuse of judicial discretion which would warrant a reversal.

Finally appellant complains that no allowance was made for costs except $100 for plaintiff's medical witness. Appellant points out that witnesses appeared from various parts of the United States and argues that their expenses must have

been considerable. Appellant is in no position to urge the matter since no showing of actual costs or the amounts thereof was made.

Decree and order affirmed.

Nourse, P. J., and Goodell, J., concurred.